## JOHN H. BASFORD, Adm'r of ISABELLA HUTCHINS, *vs.* JOHN A. MILLS, Adm'r of WALTER MILLS.

Search for original insolvent papers, made by a deputy clerk during the trial of the case, in which he examined the papers and records in the clerk's office and a large and confused mass of records and papers in another room, lying on the floor in piles or in boxes, and which were generally put up in bundles and marked on the envelopes "appearances," "trials," &c., by examining the envelopes, but in which he did *not examine the endorsements of any of the papers in the envelopes,* and when he found a bundle marked "trials," for instance, *he laid it aside and did not examine its contents,* is insufficient to permit the introduction of secondary evidence, the clerk having proved that when a final discharge was granted, the papers *were placed in the judgment bundle of the term.*

In an action of replevin, the defendant offered to prove "that the plaintiff was an insolvent debtor and had taken the benefit of the insolvent laws of this State." HELD, that this evidence under the *offer* was irrelevant to the matter in issue.

APPEAL from the Circuit Court for Calvert county.

*Replevin* by the appellee against the appellant, to recover several negroes alleged to belong to the plaintiff's intestate. By agreement, all errors in pleading were waived and either party was allowed to give in evidence any facts that would be admissible under any form of legal pleadings.

49      v.6

*Exception.* The defendant, (after evidence relating to the issue of property in the plaintiff's and defendant's intestate, respectively, which need not be stated,) to maintain the issues on his part joined, and in order to introduce secondary evidence that Walter Mills, (the plaintiff's intestate,) was an insolvent debtor and had taken the benefit of the insolvent laws of this State, proved by Gibson, one of the sworn deputy clerks of the clerk of Calvert county, that there is no record of insolvent proceedings other than the docket entries thereof in that office; that the witness has, since the commencement of this trial, searched in the office and can find no other bundle of original papers of insolvent cases than those produced, being a bundle of about twenty cases; and since he has been deputy clerk he has neither seen nor heard of any other original insolvent papers, and that in that bundle, which he has examined recently for that purpose, he cannot find any such papers of Walter Mills as an insolvent debtor; that it has never been the custom in that office to record the deeds of insolvent debtors to their trustees, and that he had found in the office no insolvent papers prior to 1844.

The defendant further offered in evidence a writ of *ca. sa.* against said Mills, issued in 1832, on a judgment against him, which writ was returned by the sheriff *"cepi."* Gibson was then further examined and proved, that he was regularly employed as a deputy in the clerk's office from November 1842 to November 1844, since which time he has had no connection with the office except during the sittings of the court, when he is in the habit of assisting the clerk as one of his deputies; that he never made any search for these papers and records until during the present trial, (October 1851,) when he was requested by defendant's counsel to do so, and that he therefore examined the papers and records in the clerk's office, and a large and confused mass of records and papers, belonging to the office, in a room up stairs in the court house, where they had been removed for want of room and cases in the office, and which were not arranged in cases but lying on the floor in piles or in boxes; that the papers are generally put up in bundles and marked on the envelopes "appearances," "trials,"

&c., of the term to which they belonged, and that he examined these envelopes but did not examine the endorsements of any of the papers in the envelopes, and when he found a bundle marked "trials," for example, he laid it aside and did not examine its contents.

On cross-examination he stated, that the search made by him was on the night before; that he looked over the whole court house, in both rooms, opened three trunks and examined all the bundles, but did not examine all the small bundles; that he was a deputy in 1843, and at nearly every term since, but is not a regular clerk; that Mr. Dixon was the chief clerk in the clerk's office and Mr. Foreland was another deputy.

The testimony of Mr. Sollers, the clerk, is fully stated in the opinion of this court.

The defendant then insisted, that the aforesaid evidence offered to the court was a sufficient foundation to authorise him to introduce secondary evidence that said Mills had taken the benefit of the insolvent laws, and the following docket entries of his petition therefor: "Calvert county court, October 1833; Walter Mills' petition for the benefit of the insolvent laws; petition; list of creditors; schedule of property, &c.; order of publication; petition for further time to notify creditors at May court 1833; allowed until October court 1833;"—and the following docket entries on the judicial docket in the case against said Mills, before referred to: "*Ca. sa.;* debt, $49.92; judgment signed October court 1826; "*cepi,*" sheriff called; discharged under petition for insolvency; *fi. fa.* issued to May court 1834."

The plaintiff objected to the admissibility of Gibson's evidence on the ground, that he was not a person properly authorised to make such examination; and also insisted, that if his testimony be admissible, the whole of the evidence offered to the court as aforesaid was insufficient as a foundation for the introduction of the secondary evidence proposed to be offered of the discharge of said Mills and of the said entries on the judicial docket, but the court, (BREWER, J.,) admitted Gibson's testimony as aforesaid with the other evidence offered as aforesaid, but was of opinion, and so decided, that the whole

thereof was insufficient to let in the said secondary evidence offered as aforesaid by the defendant. To this ruling the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*Hagner* and *Randall* for the appellant, argued the following points:

1st. That as the appellee had offered proof that his intestate had been in possession of these negroes, claiming them from six to sixteen years prior to 1836, and the appellant had offered evidence of admissions of said intestate that he had no title to them, and also possession and title in *his* intestate through her ancestor, Abram Lowe, who took them after the death of said Walter Mills, and retained them until his own death, in 1837, when they passed through his estate to the appellant's intestate, as one of his distributees, who held them herself, or by the appellant, until the institution of this suit, when, for the first time, in 1849, administration was taken out by the appellee on the estate of Walter Mills, though he had died thirteen years before, it was competent for the appellant to show that Walter Mills was insolvent in the year 1832.

2nd. That the facts the appellant offered to prove constituted a sufficient foundation for the introduction of the secondary evidence, in order to prove that said Mills was then an insolvent debtor. It is not the fact of the trustee's giving bond that transfers the property of the insolvent to him, but the proceedings upon his petition *prior* to his *discharge.* See the *Acts of* 1805, *ch.* 110, *sec.* 5; 1808, *ch.* 71, *sec.* 3; 1812, *ch.* 77, *sec.* 6; 1774, *ch.* 28, *sec.* 6; 1827, *ch.* 70, *secs.* 1, 8. *Winchester's case,* in 2 *G. & J.,* 78, does not decide that the property was not vested in the trustee, but only that he could *not sue* because his bond was defective; there is a clear distinction between the *vesting of property* and the *right to sue.* That the *search was sufficient, see* 3 *Bouv. Ins.,* 341. 3 *Cow.*

*Philips*, 509, 521, 558. 1 *Greenlf. on Ev.*, secs. 521, 540. 4 *Wend.*, 545, *Jackson vs. Russell*. 7 *Pet.*, 99, *Minor vs. Tillotson*. 12 *G. & J.*, 306, *Brooks vs. Brooke*. 2 *Rawle*, 232, *Ruggles vs. Gaily*. 2 *G. & J.*, 263, 265, 273, 283, *State vs. Wayman*. 3 *Md. Rep.*, 312, *Glenn vs. Rogers*. *Ibid.*, 147, *Gaither vs. Martin*. 9 *Gill*, 326, *Clements vs. Ruckle*. 1 *Gill*, 61, *Mulliken vs. Boyce*. 2 *Rand.*, 542, *Ben vs. Peete*. 4 *Cow. Philips*, 1214, 1219, 1223. 6 *G. & J.*, 393, *Hall vs. Hall*. Slight evidence that the paper once existed will be sufficient. 1 *Greenlf. on Ev.*, sec. 558.

3rd. That especially were these facts a sufficient foundation for the introduction of this secondary evidence, as the primary evidence to be supplied was the lost record of the very court in which the case was tried, or the failure of the officers of that court to make such a record, according to the proof of its clerk and deputy. 3 *Bouv. Ins.*, 332. 1 *Greenlf. on Ev.*, sec. 507.

4th. Because these docket entries and *fieri facias* were in themselves evidence, which should have been admitted by the court to show that Walter Mills had taken the benefit of the insolvent laws. These laws do not require that the papers in insolvency should be *recorded*. See the *Acts of* 1805, ch. 110, sec. 14; 1817, ch. 119, sec. 8; 1826, ch. 247, sec. 10. See also on this point 1 *Greenlf. on Ev.*, secs. 511, 538. 4 *Cow. Philips*, 1212, 1213. 6 *G. & J.*, 62, *Crawford vs. Berry*. 1 *Gill*, 208, *Bowie vs. Jones*. 2 *Do.*, 62. 1 *Md. Rep.*, 241, *Keedy vs. Newcomer*. 5 *Do.*, 286, *Parker vs. Sedwick*. The fact that Mills was insolvent in 1832 was clearly a relevant matter to this issue. It was offered to *sustain the issue* on our part, and if he was an insolvent debtor the presumption is that the court granting his discharge acted properly in the matter, and all presumptions are in favor of the validity of their proceedings. In 3 *G. & J.*, 441, *Judge Dorsey* says, if the fact that the party had taken the benefit of the insolvent laws "had been offered to prove that the property had passed out of him," it would have been admissible. Mills could not have received his discharge under these laws unless he had divested himself of all his property.

*Oliver Miller* and *John V. L. McMahon* for the appellee, argued the following points:

1st. *As to the relevancy of the fact proposed to be proved by the secondary evidence:* As to this it is maintained that the relevancy must plainly appear, either by the fact proposed to be proved or in the *offer of it.* 6 *Conn.*, 149, *Clark vs. Beach.* 6 *Ala. Rep.*, 390, *Crenshaw vs. Davenport. Ibid.*, 410, *Tuggle vs. Barclay & Co.* 1 *Md. Rep.*, 334, *Middlekauff vs. Smith.* 3 *Cow. Philips*, 428, *note* 326. That the fact of Mills' discharge under the insolvent laws was irrelevant in this case, except so far as it may be evidence of another fact; that is, that Mills' title to the property in question was divested by his discharge or under his application for it; that Mills' title to it was not divested either by his application or by his discharge, but only by the appointment and bonding of a trustee under his application. 2 *G. & J.*, 78, 79, *Winchester vs. Union Bank. Acts of* 1805, *ch.* 110, *sec.* 4, and 1827, *ch.* 70, *sec.* 1. 3 *G. & J.*, 510, *Stewart vs. Stone, et al.* 5 *H. & J.*, 407, *Kennedy vs. Boggs.* That his discharge is not evidence of the fact of the appointment and bonding of a trustee, and especially not in this case, where the sole and primary proof of the court's proceedings on his application (by the *docket entries* on his application and Gibson's proof,) shows that no trustee was ever appointed, and where too the discharge, if there ever was any, could only have been by parol, and therefore void. 3 *Campbell N. P.*, 236, *Scott vs. Clare.* 8 *Eng. C. L. Rep.*, 256. 3 *Barr.*, 269, *Karch vs. The Commonwealth.* 1 *Cow. Philips*, 219. 1 *Barr.*, 503, *Loughry vs. McCullough.* 10 *Sme. & Mar.*, 552, *Eakin vs. Vance.* And also because there was no evidence of any search for the trustee's bond or the record of it; and lastly, that the evidence is irrelevant, because it is not shown by the fact or the offer of it that it would affect the plaintiff's right to recover in this action, as it was irrelevant to the matter in issue; on this point the case of *Sothoron vs. Weems*, 3 *G. & J.*, 435, is conclusive.

2nd. *As to the proper foundation for the introduction of the secondary evidence:* That to let in secondary evidence of any

record or document, the facts "that the record or document once existed, and also that it has been since lost or destroyed," must *both* be proved. 1 *Greenlf. on Ev.*, secs. 349, 558. 1 *Cow. Philips*, 452. 4 *Md. Rep.*, 362, *Young vs. Mackall.* 6 *Barr.*, 154, *Baskin vs. Seechrist.* 18 *Conn.*, 311, *Kelsey vs. Hanmer.* 6 *Binney*, 59, *Caufman vs. Congregation of Cedar Spring.* That the discharge itself, even if proved, if evidence at all, is but secondary evidence of the appointment and bonding of a trustee, and the proper foundation was not laid for it as such secondary evidence; and that even as to the fact of *discharge* alone, which is a judicial act and an act of record, there was no sufficient proof that any such discharge ever existed.

3rd. *As to the search to be made to establish the loss of the discharge, if it ever existed:* That the search should have been made by the proper custodiary, should have been thorough, *bona fide* and diligent, not hasty or confused, such as to exhaust all the means of discovery which the examination would reasonably suggest and such as the party would make, if searching under the belief that without the discovery the evidence would be wholly inadmissible. 1 *Greenlf. on Ev.*, sec. 558. 3 *Cow. Philips*, 1223 to 1229. 5 *Gilman*, 117, *Mariner vs. Saunders.* 2 *G. & J.*, 283, *State vs. Wayman.* 3 *Md. Rep.*, 320, *Glenn vs. Rogers.* That in this case there was no such search, either as to the person making it, the places searched, or the extent of the search; that the search was hasty and confused, and of the most superficial character, in which, with the exception of one bundle, nothing but the outside of the bundles was examined, and in which especially the trial bundles were not examined at all; in which some of the bundles were not even looked at, and in which, especially, no search was made for the trustee's bond, if any, or the record of it.

Le Grand, C. J., delivered the opinion of this court.

This was an action of replevin to recover the possession of several negroes. The only questions which we are called upon to determine arise under the plea of property in a stranger.

The defendant, "in order to introduce secondary evidence *to prove that the said Walter Mills, (the plaintiff's intestate,) was an insolvent debtor and had taken the benefit of the insolvent laws of this State,*" proposed to prove by Mr. Gibson, who sometimes acted as the deputy of the clerk of Calvert county court, that he had made search, without success, for the original papers in insolvency of Walter Mills; and also offered in evidence certain docket entries of the application of Mills, and of the issue of a *ca. sa.* against him to enforce the payment of a judgment obtained against him by a certain William Dallam.

To the admissibility of this evidence the plaintiff's counsel objected; but the court admitted the evidence of the witness, Gibson, with the other evidence, but was of opinion, and so decided, that the whole thereof was insufficient as a foundation to let in secondary evidence as proposed. To this ruling the defendant excepted.

The proof of Mr. Sollers, the clerk of the county court, was, "that the only bundle of insolvent papers which he has ever seen goes back no farther than 1846, *but that he does not know whether there are any others or not. When a final discharge is granted, the papers are put in the judgment bundle of that term.*" The witness, Gibson, proved, that "he had never made any search for these papers and records until during the present trial, when he was requested by defendant's counsel to do so, and that he therefore examined the papers and records in the clerk's office and a large and confused mass of records and papers, belonging to the clerk's office, in a room up stairs in the court house, to which they had been removed for want of room and cases in the clerk's office, and which were not arranged in cases, but lying on the floor in piles or in boxes; that the papers are generally put up in bundles and marked- on the envelopes 'appearances,' 'trials,' &c., of the terms to which they belonged, and that he examined these envelopes *but did not examine the endorsements of any of the papers* in the envelopes; and when he found a bundle marked 'trials,' for example, *he laid it aside and did not examine its contents.*"

It is very clear to our mind, that the court below properly decided such evidence insufficient to permit the introduction of secondary testimony. Mr. Sollers had proved, that when a final discharge was granted, the papers were put in the *judgment bundle of the term.* Now it is clear, that the deputy, Mr. Gibson, in his search, did not make examination of the contents of these bundles, and therefore, from all we can see or the court below, the papers desired might have been in the bundles pointed out by Mr. Sollers, but which were not examined by Mr. Gibson. Without such examination, secondary evidence cannot be properly admitted.

But apart from this, the testimony under the *offer* of the defendant was irrelevant to the matter in issue. The case of *Sothoron vs. Weems,* 3 *Gill & Johns.,* 435, is conclusive on the point. In that case the offer was the same as in this case. There the defendant, *for the purpose of showing that George Weems, one of the plaintiffs, had been finally discharged under the insolvent laws of the State, offered to read in evidence a transcript of the record and proceedings in his case, before the commissioners of insolvent debtors,"* &c. This was objected to by the counsel for the plaintiff, and the court sustained the objection. In commenting on this action of the county court, the Court of Appeals say: " The withholding from the jury the evidence set forth in the third bill of exceptions, gives to the appellant no ground for complaint; *it was offered for a particular purpose,* and if inadmissible therefor it was properly rejected, *although it might be admissible for other purposes.* The object of the testimony was stated to be, 'for the purpose of proving that he, (George Weems,) had been finally discharged under the insolvent laws of the State.' This fact being immaterial to the issue in the cause, the proof for its establishment could not be otherwise than incompetent. *Had it been offered, not only for the purpose stated, but to prove that all the property, rights and credits of George Weems had passed out of him and vested in his trustee, it might perhaps have presented a different question for consideration."* For these reasons the judgment ought to be affirmed.

50      v.6

Eccleston, J., delivered the following separate opinion concurring in the affirmance of the judgment.

The point decided below and to which the exception was taken, is, that the preliminary proof given was not sufficient to let in secondary evidence "to prove that the said Walter Mills was an insolvent debtor, and had taken the benefit of the insolvent laws of this State."

In the opinion delivered by the chief justice, the first ground taken for affirming the decision of the circuit court relates to the search for the insolvent papers of Mills. Considering the views expressed in the opinion on this point quite sufficient to sustain the decision below, I do not deem it necessary to assign a further reason for the affirmance.

*Judgment affirmed.*